**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2025**

# In the Court of Appeals of Georgia

A24A1193. HUTCHINS v. THE STATE.

PIPKIN, Judge.

Cerron Lavar Hutchins was convicted by a jury of vehicular homicide in the first degree and related crimes. He appeals following the denial of his motion for new trial, arguing that the evidence was insufficient, that the trial court erred by failing to hold a competency hearing, and that trial counsel was ineffective in several respects. For the reasons that follow, we reverse Hutchins' conviction for following too closely but otherwise affirm.

Construed to support the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed the following. One afternoon in August 2018, a school bus stopped on Highway 90 in Dooly County to

drop off a student. The yellow and red lights on the bus were flashing, its stop sign was displayed, and an illuminated plate on the back warned drivers to stop. Three passenger vehicles were stopped behind the bus when Hutchins sped down the highway in his Lexus. Hutchins collided with the last vehicle in line — a Chevrolet Malibu driven by Lori Saldana. The force of the impact killed Saldana instantly and caused her car to ignite. Hutchins' Lexus dragged the flaming Malibu into the other two vehicles behind the bus. Ultimately, the Lexus came to a stop after hitting a pole, while the Malibu ended up in a nearby driveway.

Eight 911 calls were made about the crash, two of which were made by people involved: a person on the school bus and the driver of the first vehicle behind the bus. Law enforcement arrived and managed to locate all of the drivers involved in the wreck except for Hutchins, whom a witness had seen run toward a house near the woods. Shortly after the crash, a resident of that house returned home and discovered Hutchins inside. Although Hutchins had not been invited to enter the house, the resident offered Hutchins water, which he accepted. The resident led Hutchins outside to a water hose, but Hutchins came back inside without permission minutes later. The resident then went outside and alerted officers, leading to Hutchins' arrest.

Law enforcement suspected that Hutchins was under the influence of marijuana due to the strong smell of burnt marijuana emanating from his car and clothing, his dilated pupils, his "very bloodshot" eyes , and his mumbled speech. Nevertheless, Hutchins was not subjected to field sobriety testing because he complained of injuries. He was transported to a hospital in Crisp County, where he was given *Miranda* warnings. There, an officer asked Hutchins to pull down his lower eyelids and open his mouth. Hutchins complied, allowing the officer to see that his conjunctiva was reddened and his tastebuds were raised — signs primarily associated with marijuana use. The officer read Georgia's implied consent notice, but Hutchins refused to take a blood test. The officer then obtained a search warrant from a Crisp County magistrate judge for Hutchins' blood, which later tested positive for a marijuana metabolite.

Meanwhile, the Georgia State Patrol's Specialized Collision Reconstruction Team ("SCRT") investigated the scene. Although one witness claimed that Hutchins "threw on brakes" before the crash, investigators found no indication of tire marks or gouges on the roadway indicating that Hutchins braked. They also downloaded data from the electronic control module in Hutchins' car pursuant to a Dooly County

search warrant. The data showed that Hutchins was traveling approximately 78 miles per hour before the wreck — at least 20 miles over the posted speed limit[1] — and that the brake switch was never activated before impact.

Hutchins was indicted on four counts of first degree vehicular homicide (OCGA § 40-6-393 (a)); driving under the influence of marijuana (OCGA § 40-6-391); reckless driving (OCGA § 40-6-390); meeting or overtaking a school bus (OCGA § 40-6-163); hit and run (OCGA § 40-6-270 (a)); failure to report an accident (OCGA § 40-6-273); following too closely (OCGA § 40-6-49); and speeding (OCGA § 40-6-181). A jury found Hutchins guilty on all counts and he was sentenced to a total of 18 years to serve: 15 years to serve on first degree vehicular homicide predicated on DUI (marijuana) and 12 months to serve consecutively on each count of failure to report an accident, following too closely, and speeding. The remaining counts were merged. Hutchins filed a timely motion for new trial, which was denied. This appeal follows.

1. Hutchins argues that the evidence was insufficient to support his convictions for first degree vehicular homicide and failure to report an accident. We disagree.

[1] Conflicting testimony showed that the posted speed limit was either 55 or 45 miles per hour.

When we consider the legal sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

(Emphasis omitted.) *Wright v. State*, 304 Ga. App. 651, 652 (1) (697 SE2d 296) (2010). Thus, "the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case." (Citation and punctuation omitted.) *Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

(a) *Vehicular homicide*. Hutchins argues that the evidence was insufficient to show that he committed first degree vehicular homicide by driving under the influence of marijuana because the positive metabolite test showed only that he had ingested marijuana or THC in the past. In support of this argument, he points out that the forensic toxicologist could not determine when the ingestion occurred or how his motor skills were specifically affected. This argument lacks merit.

5

A DUI less safe conviction may be based on circumstantial evidence. See *Patterson v. State*, 302 Ga. App. 27, 28 (690 SE2d 625) (2010). The circumstantial evidence need not exclude every hypothesis or inference save that of guilt — only those that are reasonable — and it is the factfinder's function to determine witness credibility and questions of reasonableness. See id.

Here, the evidence at trial showed that Hutchins was traveling more than 20 miles over the speed limit and that he failed to brake before slamming into a line of stopped vehicles, which included a bus with flashing lights. At the time of the crash, his vehicle smelled strongly of burnt marijuana, and he exhibited signs of recent marijuana use, including dilated pupils, bloodshot eyes, reddened conjunctiva, and raised taste buds. Although the State's toxicology expert could not pinpoint when Hutchins ingested marijuana, the expert testified that marijuana can negatively affect a person's ability to drive for up to 24 hours after ingestion. Under these circumstances, the evidence was sufficient to establish that Hutchins was guilty of driving under the influence of marijuana to the extent it was less safe for him to drive. See *Wright*, 304 Ga. App. at 652-653 (1) (evidence showing that defendant committed a traffic violation while methadone and Xanax were "still present in his blood at the

time of" a fatal collision was sufficient to show that the defendant had been DUI less safe); see generally *Crowe v. State*, 277 Ga. 513, 514 (591 SE2d 829) (2004) (reasoning that jury could find that victim was impaired by marijuana at time of crash based on victim's failure to apply brakes before impact and lab results indicating marijuana metabolites).

Hutchins also argues that the evidence was insufficient because speed, not intoxication, was the proximate cause of Saldana's death. This argument also lacks merit. Here, the State had the burden of proving that the DUI was the legal or proximate cause, as well as the cause in fact, of the death. See *Hartzler v. State*, 332 Ga. App. 674, 677 (1) (774 SE2d 738) (2015). In this regard, a death is proximately caused by an act when the evidence shows that the act played a substantial part in bringing about the death and that the death was either a direct result or a reasonably probable consequence of the act. See id. Moreover, what constitutes proximate cause is a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent. See id.

Based on the evidence outlined above, including the expert testimony that a marijuana metabolite was present in Hutchins' system, that marijuana impairs a

7

person's ability to conduct complex tasks such as driving, and that Hutchins failed to slow down or brake before slamming into a line of vehicles stopped behind a bus with flashing lights, a jury could reasonably have found that Hutchins' intoxication "played a substantial part in bringing about [Saldana's] death and that her death was a reasonably probable consequence of his actions." (Citation and punctuation omitted.) *Hartzler*, 332 Ga. App. at 677 (1). Accordingly, the evidence was sufficient to sustain Hutchins' conviction on this count.

(b) *Failure to report an accident.* Under Georgia law, "[t]he driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of $500.00 or more shall immediately, by the quickest means of communication, give notice of such accident" to the appropriate law enforcement agency. OCGA § 40-6-273. Hutchins argues that the evidence on this count was insufficient because eight 911 calls were placed, but no trial witness was asked whether his cell phone number called 911 or the sheriff's office. However, "[c]ircumstantial evidence is sufficient to support a conviction when it excludes every reasonable hypothesis except the guilt of the accused. The State need not remove every possibility of innocence of the crime charged." (Citations omitted.) *Harris v.*

*State*, 328 Ga. App. 852, 855 (2) (763 SE2d 133) (2014). Here, an investigator testified that only two of the 911 calls were made by someone "actually involved in the wreck that day": a person on the school bus and the driver of the first vehicle behind the bus. Further, the evidence showed that rather than remaining at the scene after the accident, Hutchins fled to a nearby house where he made no mention of the accident. Based on these circumstances, a jury could reasonably infer that Hutchins did not report the accident, and the evidence is sufficient to sustain this count.

2. Hutchins contends that the trial court plainly erred in allowing the case to proceed to trial without holding a hearing on his competency, and that this Court should remand this case for a post-conviction competency hearing. We disagree.

The record shows that the trial court granted a petition for a competency evaluation.[2] However, the only other reference to this evaluation is a letter from the Georgia Department of Behavioral Health & Developmental Disabilities ("DBHDD") indicating that Hutchins could not be reached for the evaluation, and that DBHDD would await further direction from the court. Hutchins' competency was not

---

[2] The petition is referenced in the trial court's order but is not in the record on appeal.

discussed during trial, nor was trial counsel questioned about it at the motion for new trial hearing.

Hutchins has failed to establish that the trial court was obligated to hold a competency hearing. Generally, we presume a defendant is mentally competent, and the burden is on the defendant to prove incompetency. See OCGA § 16-2-3; *Traylor v. State*, 280 Ga. 400, 406 (4) (b) (627 SE2d 594) (2006). "If an accused files a motion requesting a competency evaluation, the court may order [DBHDD] to conduct an evaluation[.]" OCGA § 17-7-130 (b) (1). Furthermore, the trial court has an independent duty to inquire into the accused's mental competency "[w]hen information becomes known to the court sufficient to raise a bona fide doubt regarding the accused's mental competency to stand trial[.]" OCGA § 17-7-129 (a). This sua sponte duty arises

> only when information becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence. The need for a competency evaluation depends on whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.

10

(Citations and punctuation omitted.) *Palmer v. State*, 303 Ga. 810, 813 (II) (814 SE2d 718) (2018).

Hutchins asserts that the trial court "perceive[d] a question about [his] competency when it ordered the DBHDD to evaluate [him]." However, the court's order simply states that "the mental competency of this defendant has been called into question" and that it granted the petition for an evaluation. The order does not clarify why the court ordered an evaluation, and the court's exercise of its authority to order an evaluation upon the defendant's motion under OCGA § 17-7-129 does not show that the court itself doubted Hutchins' competence.

Further, Hutchins does not contend that the court was aware of any information that would reasonably raise a bona fide question about his competence, and he points to none on appeal. In the absence of any irrational behavior or other conduct that would have triggered the trial court's independent duty, Hutchins cannot meet his burden of showing that the court was required to hold a competency hearing before

11

trial. Thus, there is no need to remand for such a hearing.[3] See *Riley v. State*, 356 Ga. App. 606, 611 (2) (848 SE2d 474) (2020) (finding no error in holding trial without reviewing competency hearing results where there was no evidence defendant was incompetent).

3. Finally, Hutchins asserts that his trial counsel rendered constitutionally ineffective assistance in five ways. To prevail on a claim of ineffective assistance of counsel, Hutchins must demonstrate both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Regarding deficient performance, Hutchins must show that trial counsel performed in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. See *Palmer*, 303 Ga. at 316 (IV).

---

[3] We find the cases cited by Hutchins regarding remand for a post-conviction competency hearing distinguishable, as they all involve the trial court's failure to hold a competency hearing within 45 days of receiving DBHDD's evaluation, as required by OCGA § 17-7-130 (d) (1) ("[T]he court shall hold a bench trial to determine the accused's mental competency to stand trial within 45 days of receiving the department's evaluation."). See *Cosby v. State*, 365 Ga. App. 574, 577 (1) (879 SE2d 671) (2022); *Crawford v. State*, 355 Ga. App. 401, 402-403 (2) (844 SE2d 294) (2020); *Beach v. State*, 351 Ga. App. 237, 242 (1) (b) (830 SE2d 565) (2019). Here, however, DBHDD never conducted an evaluation. Thus, the 45-day deadline was never triggered.

Regarding prejudice, Hutchins must establish a reasonable probability that the result of the trial would have been different absent trial counsel's deficient performance. See id. "If either *Strickland* prong is not met, this Court need not examine the other prong." Id.

(a) *General demurrer.* Hutchins contends that trial counsel rendered ineffective assistance by failing to file a general demurrer on the following too closely charge. We agree.

OCGA § 40-6-49 (a) prohibits following another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Here, Count 10 of the indictment alleged that Hutchins committed this offense "while driving a 2007 Lexus GS350, a motor vehicle, on Highway 90" when he "did approach another vehicle from the rear, to wit: a 2012 Chevrolet Malibu, which had stopped[.]" Because Hutchins could admit all of the allegations in this count and still not be guilty of a crime, the trial court would have been required to dismiss this charge had counsel filed a general demurrer. See *Everhart v. State*, 337 Ga. App. 348, 355 (3) (a) (786 SE2d 866) (2016). "Accordingly, [Hutchins'] trial counsel's failure to challenge this count constitutes

deficient performance, contributed to his conviction on a void count, and therefore harmed [him] and prejudiced his case." Id. See also *State. v. Heath*, 308 Ga. 836, 841 (843 SE2d 801) (2020). Hutchins' conviction on Count 10 is therefore reversed.

(b) *Evidence of conjunctiva and tastebuds.* Hutchins argues that trial counsel was ineffective for failing to move to exclude evidence regarding his conjunctiva and tastebuds because that evidence was obtained in violation of his right against self-incrimination under Paragraph XVI of our State Constitution. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating."). This claim fails.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Gonzalez v. State*, 334 Ga. App. 706, 710 (2) (780 SE2d 383) (2015). Here, the evidence showed that Hutchins agreed to pull down his eyelids and open his mouth at the investigator's request. Hutchins points to no evidence that his consent was involuntary, and he did not question trial counsel about this issue at the motion for new trial hearing. Because there is no indication that Hutchins' actions

14

were compelled, he has failed to make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. See *Olevik v. State*, 302 Ga. 228, 239-241 (2) (b) (ii) (806 SE2d 505) (2017) (explaining that the right against self-incrimination extends only to "compelled acts" of the defendant).

(c) *Crisp County search warrant.* Hutchins argues that trial counsel was ineffective for failing to move to suppress evidence derived from the Crisp County search warrant based on two points, both of which fail.

First, he argues that the search warrant was invalid because it stated that the evidence to be seized was located in Dooly County, outside the Crisp County magistrate judge's jurisdiction. However, this is a technical irregularity that does not affect the warrant's validity. See OCGA § 17-5-31 ("No search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused.").

A description in a search warrant is sufficient "if a prudent officer executing the warrant is able to locate the place definitely and with reasonable certainty." (Citation and punctuation omitted.) *Marshall v. State*, 273 Ga. App. 17, 18 (1) (b) (614 SE2d 169) (2005). Here, the search warrant was issued by a Crisp County magistrate judge,

the warrant included Hutchins' full name, and Hutchins' date of birth appeared on a hospital barcode sticker attached to the bottom of the warrant, which also contained identifying information. Under these circumstances, a prudent officer could have located Hutchins with reasonable certainty and without depending on his discretion.[4] Accordingly, trial counsel was not ineffective for failing to file a meritless motion to suppress. See *Quinn v. State*, 355 Ga. App. 352, 354 (2) (a) (842 SE2d 541) (2020) (counsel is not ineffective for failing to raise a futile or meritless motion to suppress).

Second, Hutchins argues that the underlying affidavit failed to establish a connection between his blood and the charged offenses because it neither asserted that Hutchins drove a vehicle nor explained Hutchins' involvement in the alleged crimes. We disagree.

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

---

[4] Indeed, there is no dispute that Hutchins' blood was drawn in Crisp County approximately an hour after the warrant was issued.

16

(Citation and punctuation omitted.) *Taylor v. State*, 303 Ga. 57, 60 (2) (810 SE2d 113) (2018). "Furthermore, in making the probable cause determination, a magistrate may draw reasonable inferences from the material supplied to him by applicants for a warrant." (Citation and punctuation omitted.) Id. at 61 (2).

Here, the affidavit states that law enforcement was investigating the crimes of "DUI Drugs" and "Vehicular Homicide" involving a collision that was under investigation by the SCRT, and that Hutchins' blood was evidence of driving under the influence of alcohol and/or drugs "as defined in OCGA § 40-6-391." That Code section prohibits a person from driving or being in actual control "of any moving vehicle" while under the influence of certain substances to the extent that it is less safe for the person to drive. The affidavit also states that Hutchins' driver's license was valid, and "[i]n addition," that an officer observed "symptoms of consumption and/or impairment" including the "moderate" odor of drugs, mumbled speech, a withdrawn attitude, and watery, dilated, and bloodshot eyes. The affidavit concludes by stating that "there exists probable cause to believe that the aforesaid property, substances, and behavior that have been described in this affidavit are evidence of driving or being in actual physical control of a vehicle while under the influence of

17

intoxicating alcohol and/or drugs." Given these details, we conclude that the magistrate could have reasonably inferred that there was a "fair probability" that Hutchins was the driver who caused the fatal collision. Thus, Hutchins has failed to make a strong showing that a motion to suppress would have been granted, and he cannot succeed on this ineffective assistance claim.

(d) *Dooly County search warrant.* Hutchins claims that counsel was ineffective for failing to move to suppress evidence derived from the Dooly County search warrant because the warrant violated the particularity and overbreadth requirements of the Fourth Amendment. We disagree.

The search warrant authorized "[a] download of any Airbag Control Modules (ACM), Electronic [C]ontrol Modules (ECM) and any electronic devices located in [Hutchins'] vehicle" and "[a] vehicle inspection to show any causation factors in this crash." Pursuant to that warrant, law enforcement downloaded data from the Lexus's airbag control module. This data included information such as the vehicle's speed in the seconds leading up to the crash and whether the brake switch was activated. At trial, a witness relied on the report to testify that the Lexus was traveling 78 miles per

hour during the entire four seconds leading up to the crash and that the brake was never activated during that time.

Hutchins asserts that the warrant was overbroad because the affidavit failed to set forth probable cause to search "any electronic devices located in the vehicle." Even assuming that this provision was overbroad, however, there is no indication that any electronics other than the ACM were searched. Thus, Hutchins has failed to establish harm, and this claim fails. See *Pugh v. State*, 318 Ga. 706, 719 (2) (e) (899 SE2d 653) (2024) (finding that defendant could not show harm where no evidence admitted against him at trial was seized solely pursuant to the allegedly overbroad portions of a search warrant).

Hutchins also claims that the warrant was overbroad because it failed to provide any guidance for, or limitations on, the search. In support of this argument, Hutchins relies on *State v. Wilson*, 315 Ga. 613 (884 SE2d 298) (2023), in which the Supreme Court held that a warrant authorizing the seizure of "any and all stored electronic information" on the defendant's cell phones was not sufficiently particularized. See id. at 615-616. However, *Wilson* involved cell phones, which are "minicomputers" that "differ in both a quantitative and a qualitative sense from other objects that might

be kept on an arrestee's person." *Riley v. California*, 573 U. S. 373, 393 (III) (B) (1) (134 SCt 2473, 189 LE2d 430) (2014). In this case, there is no indication that ACMs or ECMs contain the same breadth of information as cell phones, and Hutchins cites no precedent holding that a search warrant requesting data from a vehicle's ACM or ECM violates the Fourth Amendment under these circumstances. Given the lack of binding appellate precedent on this issue, Hutchins has not carried his burden of showing that his trial counsel's failure to move to suppress the search warrant was patently unreasonable, and this claim fails. See *Hurston v. State*, 310 Ga. 818, 829-830 (3) (b) (854 SE2d 745) (2021).

(e) *Lesser included offense*. Hutchins contends that trial counsel was ineffective by failing to request a jury charge on the lesser included offense of second degree vehicular homicide predicated on speeding. We disagree. Hutchins' defense at trial was that the State failed to prove the charges beyond a reasonable doubt, and trial counsel reiterated at the motion for new trial hearing that the theory of defense was that Hutchins "did not do what he was accused of." Under these circumstances, counsel's failure to seek a charge on a lesser included offense that was inconsistent with Hutchins' all-or-nothing defense did not constitute ineffective assistance. See

*Woods v. State*, 342 Ga. App. 301, 305 (2) (802 SE2d 822) (2017); see also *Villegas v. State*, 334 Ga. App. 108, 112 (2) (778 SE2d 363) (2015) (finding that counsel's failure to seek a charge on a lesser included offense and instead to pursue an all-or-nothing strategy is not so patently unreasonable that no competent attorney would have made that decision).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Gobeil, J., concur.*